OPINION
On January 29, 2001, appellant, Manuel Turner, was charged with two counts of domestic violence in violation of R.C. 2919.25(A) and (C). Said charges arose from an incident involving appellant's wife, Sirani Turner.
A trial date was scheduled for March 27, 2001. On said date, the state requested a continuance as the victim failed to appear to testify. The trial court granted the request and rescheduled the trial for April 17, 2001. On said date, the victim again failed to appear however, a bench trial commenced. Appellant represented himself. At the conclusion of the trial, the trial court found appellant not guilty of violating R.C.2919.25(A) and guilty of violating R.C. 2919.25(C). By judgment entry filed May 8, 2001, the trial court sentenced appellant to thirty days in jail, suspended in lieu of conditional probation.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I. THE DEFENDANT WAS DENIED HIS RIGHT TO LEGAL COUNSEL.
 II. THE EVIDENCE PRESENTED WAS MISINTERPRETED BY THE JUDGE.
 III. THE STATE OF OHIO FAILED TO INTRODUCE SUFFICIENT EVIDENCE TO WARRANT A CONVICTION OF THE DEFENDANT-APPELLANT.
 I
Appellant claims he was denied his right to be represented by legal counsel. We disagree.
Under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, an accused shall be given the right to counsel.
At his initial appearance on January 29, 2001, appellant was given and signed a "Your Rights in Court" form. Contained within said form is an explanation of the right to have an attorney and a waiver of attorney. Appellant signed the acknowledgment of rights and instructions, but did not waive his right to a private or court appointed attorney.
On February 6, 2001, the matter was set for a bench trial for March 27, 2001. On said date, appellant appeared without counsel and never requested a court appointed attorney. The state moved for a continuance which was granted. The matter was rescheduled for April 17, 2001.[1]
Before beginning the bench trial on April 17, 2001, the trial court asked appellant if he was ready to proceed. April 17, 2001 T. at 4. Appellant responded in the affirmative. Id. The trial court then asked appellant if there was "anything you need to bring to the Court's attention before we get started here today?" Id. Appellant responded as follows:
 Well, Your Honor, the last time we were in Court, the prosecutor stipulated that it was necessary to have the complainant here in order to proceed. I'm trying to find out what's changed the situation. I objected the last time we were in Court that without a complainant [tape inaudible] this trial for lack of, lack of, lack of prosecution. * * * Your Honor, [tape inaudible] agreed that it would be necessary to have all parties available. At this time I don't see anyone but the officer here which of course can only give hearsay testimony. [Tape inaudible] admissible. I wonder why I'm on trial with no complainant. Aren't I allowed as a alleged to face my accuser?
 Id. at 4-5.
Thereafter, the trial court explained the "accuser" was the State of Ohio. Id. at 5. After realizing the state would proceed regardless of the victim's absence, appellant asked the trial court "I still have the right at any point to request an attorney, right?" Id. at 5. The following exchange then occurred:
 MR. TURNER: At any point in the proceedings. I think that's my right, if I am not, if I am not capable at any point of defending myself I believe I must have the availability to request an attorney.
 THE COURT: I'm not sure at any point. You've been advised of that a lot of times and you've had the right to do that up from the day you were arraigned which was January the 29th until now.
MR. TURNER: I agree with that, Your Honor.
THE COURT: Two and a half months.
 MR. TURNER: I agree with that. It was, it was my understanding that —
 THE COURT: It would be a little untimely at this point.
 MR. TURNER: It was my understanding, Your Honor, that the prosecution in his own words said he would not, could not go forward without a complainant. I don't see one here. Well, at the point, the complainant in order to proceed in this case. Now I'm presented with a situation I may or may not be prepared for. We can proceed at this point.
 THE COURT: Well, that's obvious, I would like to try the case without their victim, whoever that is.
 MR. TURNER: As I says, Your Honor, I have no choice. I'm here.
 THE COURT: Well, you do have the right to an attorney, a right to be represented by one, a right to have one appointed to represent you if you couldn't afford to hire one and I'm assuming that by you being here again today without an attorney that you're electing to represent yourself and proceed without one, but —
MR. TURNER: I am here, Your Honor. I'm here.
 THE COURT: Okay. Well, I, I see that. Was there anything else you can think of before we get started, Mr. Turner? Anything else come to mind?
MR. TURNER: No, sir.
Id. at 5-7.
The record establishes from appellant's own actions or his failure to act, he voluntarily proceeded without counsel.
Assignment of Error I is denied.
 II, III
These assignments of error challenge the trial court's finding of guilty of R.C. 2919.25(C). Appellant argues the trial court misconstrued the evidence and the evidence was insufficient to support a conviction. We disagree.
On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. Appellant was convicted of domestic violence in violation of R.C. 2919.25(C) which states "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."
At trial, appellant's sister, Theresa Felix, testified that on the evening in question, the victim called her and said she was upset because she felt threatened by appellant. April 17, 2001 T. at 9-10, 11; Plaintiff's Exhibit 7. The victim asked Ms. Felix to call the police.Id. at 10. After Ms. Felix tried to call the victim "back a couple times, couldn't get ahold of her" Ms. Felix called the police. Id. at 10-11. On cross-examination, Ms. Felix testified she observed no injuries on the victim a week later, and she was not personally aware of any physical altercations between the two. Id. at 15, 18.
The police officers who were dispatched to the scene, Patrolman Chuck Wilhelm and Sergeant Scott Snow, testified the victim was extremely upset and crying. Id. at 20, 24, 41. The victim remained very upset, scared and crying during the entire investigation, although there was no evidence of physical marks on the victim. Id. at 24-25, 28. The furniture was "knocked all over the place, chairs tipped over, clutter all about." Id. at 21, 41. Sergeant Snow testified the victim was crying and upset and stated that appellant had threatened her with a can opener/cork screw and the disarray in the home was the result of a physical altercation with appellant. Id. at 41-42. Appellant had threatened to cut the victim's neck "[f]rom ear to ear." Id. at 42. Appellant had an odor of alcohol about him and was "[v]ery argumentative," "very uncooperative" and "very belligerent." Id. at 21-22. During the investigation, appellant denied physically assaulting his wife. Id. at 22.
Several photographs were taken of the residence, Plaintiff's Exhibits 1-6. These photographs depict a table knocked over with a leg broken off if it, a potted plant spilled on the floor, chairs tipped over and food spilled on the floor and splattered on the refrigerator. Id. at 23-24.
Based upon this evidence, the trial court found appellant guilty of domestic violence in violation of R.C. 2919.25(C). The trial court explained its decision as follows:
* * *
 Well, the, there's two charges here. One is causing physical harm to a person. The other is by threat of force causing the other person to think that they would be a victim of physical harm. Evidence of physical harm is usually some injury. There hasn't been any injury here. None that anybody could testify to. Some complaints about being slapped. No physical injuries it doesn't look like there.
 The state of the house, I think one of the police put it, something happened. They weren't sure what. I can't say the disarray is not normal to some extant. I mean there's a shirt hanging up, but that's not a state of disarray, that's a shirt hung on a hanger somewhere. Kid on the playpen and baby clothes and things like that, but, I mean it's obvious, too, that this is a nice house and there's a new table that's got a leg broken off, plant on the floor, food's strewn about and that's not disarray. That's a sign of some, some altercation or some violent altercation to break the table leg off and someone sitting on it or something at any rate.
 And on the basis of that action, the description of Mrs. Turner, I'll enter a guilty finding on the second of the two charges and a not guilty finding on the first of the two.
Id. at 52-53.
Appellant, in his brief and during oral argument, takes exception to the trial court's interpretation of the physical condition of the home. We are not the triers of fact and all decisions involving the credibility of the evidence and the interpretation of the evidence presented lies within the sound discretion of the fact finder. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
From our review of the evidence, including the demeanor of the victim on the day in question and the photographs presented, we find sufficient credible evidence to substantiate the trial court's decision.
Assignments of Error II and III are denied.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Municipal Court of Licking County, Ohio is affirmed.
Hon. Sheila G. Farmer, P.J. Hon. John W. Wise, J. Hon. John F. Boggins, J. concur.
[1] On March 27, 2001, appellant claimed he was employed therefore, a court appointed attorney would not have been available. March 27, 2001 T. at 3. Conceivably, appellant could argue he did not have an attorney at the April 17, 2001 trial date because he believed the victim's desire not to pursue the matter would cause a dismissal of the charges.